Andrew T. LITTLE, Doing Business as Southern School of Insurance

v.

The UNITED STATES.

No. 565–53.

United States Court of Claims.
June 5, 1957.

Hughie Ragan, Jackson, Tenn., for plaintiff.

David Orlikoff, Washington, D. C., with whom was George Cochran Doub, Asst. Atty. Gen., for defendant. M. Morton Weinstein, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This suit is based upon a contract between the plaintiff and the Veterans Administration.

The plaintiff, doing business as the Southern School of Insurance in Jackson, Tennessee, engaged in the education and training of veterans under Public Law 346, 78th Congress, 58 Stat. 287, § 400, 38 U.S.C.A. § 701(f); Veterans' Regulation No. 1(A), pt. 8, 38 U.S.C.A. following section 745, from October 15, 1947, to August 4, 1949.

Plaintiff received authority to train Public Law 346 veterans in a course entitled "Insurance Training" from the Department of Education of the State of Tennessee and began the training and education on October 15, 1947. From that date through June 30, 1948, plaintiff's school furnished training and education without a formal contract with the defendant. From July 1, 1948, through December 31, 1948, the school operated under Contract V3020V–43 which plaintiff had entered into with the Veterans Administration. On or about January 1, 1949, the school commenced operating under Contract V3020V–241 which was to cover the period from January 1, 1949, through December 31, 1949.

Contract V3020V–241 provided, inter alia, that the Southern School of Insurance would provide certain courses of instruction to qualified veterans at specified prices, and that the school would furnish to the veterans the books, supplies, and equipment necessary to complete the courses. It further provided that the Veterans Administration would pay the school for tuition fees and other services and would compensate the school for books, supplies, and equipment furnished the veterans at cost to the school. The contract also provided that the school would maintain records of attendance, deportment, and progress of veterans in training under the contract.

Under Public Law 346 and regulations promulgated pursuant thereto the approval or disapproval of institutions for the education and training of eligible

veterans was the responsibility of the state in which the particular school operated. The Veterans Administration under its regulations was required to present any information it possessed with respect to inadequacies of any school approved for the training of veterans pursuant to Public Law 346, to the appropriate state approving agency.

After an investigation, the Department of Education of the State of Tennessee, by letter dated April 14, 1949, notified plaintiff that the school's approval for veteran training was to be withdrawn effective as of the close of business on April 30, 1949, because the school did not meet the State's minimum requirements for the training of veterans under Public Law 346. Upon receiving this letter the plaintiff personally called on the Commissioner of Education to discuss the reasons for the withdrawal of approval and for the purpose of obtaining a revocation of the withdrawal order. As a result of this conference, the Commissioner of Education agreed to postpone the effective date of the withdrawal order and plaintiff was advised that authorization for continued operation of his school for the training of veterans would depend upon the results of another Veterans Administration inspection of the school, which plaintiff had requested. The Veterans Administration was notified of this decision by letter dated April 19, 1949, and plaintiff was sent a copy of the letter.

After learning that continued approval of the school would depend upon the outcome of a further inspection of the school, plaintiff destroyed the school's attendance records relating to veterans who were in training prior to January 3, 1949.

Pursuant to its regulations, the Veterans Administration made a spot check of the school's available records on May 6 and 9, 1949, to determine whether there had been compliance with the requirements of the state agency and with the terms of the contract. The spot check, confined to records beginning January 3, 1949, because the prior records had been destroyed, revealed irregularities on the part of the plaintiff's school with respect to records and billings for books and supplies. As a result, further payments were suspended by the Veterans Administration, effective April 30, 1949, pending a more complete audit.

On July 20, 1949, an audit team from the Veterans Administration conducted an audit and subsequently prepared an audit report on the available attendance records and other records pertaining to 52 veterans. According to the audit report the attendance records showed almost perfect attendance by all students, but contained many erasures and alterations, and students were marked present on days when they had been originally marked A, S, or L, which, according to the symbols used by the instructors, stood for absent, sick, or late. The report further indicted that the practice of alteration was widespread and that in the case of one student, there were nineteen days on which erasures and alterations were made showing that the student was present on those days when previously he had been marked absent. The audit report also revealed the existence of the following types of irregularities: (1) entries had been made on school records to show that students commenced training at a date earlier than the actual date of training; (2) some students were granted leave from classes and marked P for present; (3) students were marked present on the attendance records when their files contained a doctor's certificate stating that they were ill and unable to attend classes; (4) instructors marked students present on days when such students were actually absent; (5) certain students were reported as having made up classes on Saturdays when in fact such students never attended Saturday make-up classes, and (6) students signed receipts for books and supplies before receiving them and the Veterans Administration was billed for them before they were issued and, in some instances, for items never issued to students. The evidence submitted in this case substantiates most of the findings in the audit re-

port and reveals other irregularities not specifically noted in the audit report.

The audit report was sent to the Department of Education of the State of Tennessee for its information in accordance with Veterans Administration regulations. After the receipt of the report the Tennessee Department of Education made an investigation of conditions existing at plaintiff's school. Subsequent to its investigation, the Tennessee Department of Education issued an order removing the plaintiff's school from the State's list of schools approved for the training of veterans under Public Law 346, effective August 3, 1949.

Upon being notified that approval of his school had been withdrawn, plaintiff, on August 4, 1949, closed the school and discontinued the training of veterans.

Upon learning that plaintiff had closed his school, the Veterans Administration cancelled Contract V3020V–241 effective August 5, 1949, by registered letter dated August 9, 1949.

Count One of plaintiff's petition is a claim for tuition, books, and supplies for the period from May 1 to August 4, 1949. The school was in operation during that period and plaintiff has not been paid for the services rendered. Count Two of the petition is a claim for damages allegedly resulting from the failure of the defendant to give the plaintiff 60-day notice of termination of Contract V3020V–241 in accordance with the provisions of the contract. Count Three is a claim for damages allegedly resulting from defendant's revocation of the contract.[1]

Defendant has filed counterclaims in which it seeks to recover overpayments allegedly made to plaintiff prior to May 1, 1949, because of false and fraudulent vouchers submitted by the plaintiff. It also seeks to recover damages from the plaintiff under section 231 of the False Claims Act, 31 U.S.C.A. § 231, for false claims which it alleges were submitted by the plaintiff.

It is also the defendant's position that the court should forfeit plaintiff's claim under 28 U.S.C. § 2514, which reads as follows:

"A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice any fraud against the United States in the proof, statement, establishment, or allowance thereof.

"In such cases the Court of Claims shall specifically find such fraud or attempt and render judgment of forfeiture."

The evidence in this case is extremely confusing and contains many conflicting statements. Plaintiff's alterations of certain records and destruction of others make it difficult for the court to draw definite conclusions. However, from a reading of the entire record it becomes manifest that the plaintiff knowingly submitted fraudulent claims against the United States for services rendered during the period from January 1 to April 30, 1949, under contract V3020V–241, as well as for services rendered in 1948 under the previous contract.

Plaintiff's present suit is for services rendered after April 30, 1949, under contract V3020V–241, and for breach of that contract. The defendant does not allege that plaintiff practiced fraud after April 30, 1949, and the record does not establish fraud after that date.

■ It is true that the forfeiture statute quoted above was not intended to forfeit an otherwise valid claim of a claimant merely because, in some other unrelated transaction, he had defrauded the Government. But where, as in the present case, fraud was committed in regard to the very contract upon which the suit is brought, this court does not have the

1. When evidence was being taken in this case, counsel for the defendant moved for dismissal of Counts Two and Three of the petition under Rule 49(c) of this court, 28 U.S.C. The commissioner who took the testimony allowed the motion as to Count Three only. Action by the court in respect to this motion is unnecessary in view of our disposition of the case.

right to divide the contract and allow recovery on part of it. Since plaintiff's claims are based entirely upon contract V3020V–241, a contract under which he practiced fraud against the Government, all of his claims under that contract will be forfeited pursuant to 28 U.S.C. § 2514.

We are aware that our decision in this case conflicts, in certain respects, with this court's decision in Branch Banking & Trust Co. v. United States, 87 F.Supp. 777, 115 Ct.Cl. 341. We think it can be distinguished on the facts. However, insofar as that case may be in conflict with the opinion in the present case it is overruled.

While it is clear from the entire record that plaintiff practiced fraud under contract V3020V–241 and under his previous contract, the condition of plaintiff's records and the conflicting testimony make it impossible to determine with any degree of accuracy the specific instances of fraud or the amount overpaid the plaintiff. In view of the confused state of the record in this case we will dismiss the defendant's counterclaims. Furthermore, we will decline to apply the provisions of the False Claims Act since the facts are not sufficiently established to justify the application of the drastic penalty called for in that act. We feel that the ends of justice will be fully served by the forfeiture of plaintiff's claims pursuant to 28 U.S.C. § 2514.

Plaintiff's claims in the present case will be forfeited and defendant's counterclaims will be dismissed.

It is so ordered.

MADDEN and LITTLETON, Judges, concur.

WHITAKER, Judge, with whom LARAMORE, Judge, joins, concurring in part, and dissenting in part:

I concur, except as to dismissal of defendant's counterclaim under the False Claims Act. I would allow defendant to recover $2,000 for each fraudulent act shown and twice the amount overpaid on the false vouchers.